UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


JEFFREY S. RIDINGS, )
    Plaintiff, )
)
v. ) No. 3:12-CV-195
) (Phillips/Shirley)
CAROLYN W. COLVIN, )
ACTING COMMISSIONER OF SOCIAL SECURITY, )
    Defendant. )


## MEMORANDUM OPINION

This Social Security appeal is before the court for consideration of the Commissioner's objections [Doc. 16] to the report and recommendation filed by United States Magistrate Judge C. Clifford Shirley [Doc. 15]. Magistrate Judge Shirley found the case should be remanded so the ALJ can explain whether the plaintiff's knee impairment meets Medical Listing 1.02A. Thus, Magistrate Judge Shirley recommended that plaintiff's motion for summary judgment be granted in part and the Commissioner's motion for summary judgment be denied in part.

Plaintiff made his application for disability insurance benefits alleging disability beginning December 15, 2006. The claim was denied by the administrative law judge (ALJ) on November 23, 2010. The Appeals Council denied the plaintiff's request for review. Plaintiff sought judicial review of the Commissioner's decision. As required by 28 U.S.C.

§ 36(b)(1) and Rule 72(b), Fed.R.Civ.P., this court has now undertaken a *de novo* review of those portions of the report and recommendation to which the Commissioner objects. For the reasons that follow, the Commissioner's objections will be overruled.

The magistrate judge found that the ALJ's analysis at step three that plaintiff did not meet Medical Listing 1.02A failed to include any meaningful discussion of the evidence specifically addressing the requirements of the Listing. The magistrate judge further found that in light of conflicts in the evidence, a more thorough step three analysis is needed. The Commissioner argues that even if the ALJ should have made more detailed findings at step three, this omission was harmless error. The Commissioner points out that plaintiff has the burden of proof at step three, and must present specific medical findings that satisfy all of the criteria of a particular listing.

> Listing 1.02 requires a showing of a major dysfunction of a joint or joints:
>
> Characterized by gross anatomical deformity (*e.g.,* subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.,* hip, knee, or ankle), resulting in the inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpt. P, Appendix 1. The Regulations define "inability to ambulate effectively" as follows:

> an extreme limitation of the ability to walk; *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity function (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R. Part 404, Subpt. P, Appendix 1, §100.B2b. The Regulations provide an example of ineffective ambulation, including

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Part 404, Subpt. P, Appendix 1, § 100.B2b(2).

The Commissioner argues that any failure by the ALJ to draft a more explicit decision constitutes harmless error because plaintiff fails to establish the inability to walk without the use of a hand-held assistive device that limits the function of both upper extremities, such as a walker, two crutches, or two canes. At most, the Commissioner argues, plaintiff points to evidence that he sometimes needs to use a single cane, which is insufficient to establish the inability to ambulate effectively within the meaning of the Regulations. The Commissioner concludes that remand to have the ALJ specifically discuss Listing 1.02 would serve no practical purpose, would not alter the ALJ's findings, and would be an idle and useless formality.

The plaintiff responds that the record does support his inability to ambulate effectively. Plaintiff points out that the ALJ found that he needed the use of a cane and knee brace to walk further than 20 feet. Plaintiff consistently reported and was observed using a cane while being treated at Bearden Healthcare Associates. On March 18, 2009, Karla Benavides completed a physical residual functional capacity assessment in regards to plaintiff's limitations and indicated plaintiff would have limitations in standing and/or walking. The record shows that Dr. Stanley Rabinowitz noted that plaintiff would require the use of a cane and knee brace when walking beyond 20 feet and that plaintiff had a severe left antalgic gait. Dr. David Guttman completed a physical residual functional capacity assessment on September 21, 2009 and noted standing and walking limitations (stand and/or walk at least 2 hours in an 8-hour day, sit for a total of about 6 hours in an 8-hour day).

As noted by Magistrate Judge Shirley, plaintiff's knee impairment is well-documented in the medical record. A 2006 MRI revealed significant marrow edema related to the medial tibial plateau and medial femoral condyle, previous tear in the main body of the medial meniscus, and some degenerative irregularity of the cartilage overlying the medial femoral condyle with degenerative spurring. A 2008 MRI revealed tricompartmental degenerative changes with findings suggesting a chronic degenerative tear involving the posterior horn of the medial meniscus and more extensive edema in the medial tibial plateau without evidence of underlying fracture, and small osteochondral lesion in the

medical femoral. Based on this MRI, Dr. Stan Zemankiewicz, orthopaedic surgeon, opined that plaintiff had significant degenerative arthritis.

The court agrees with Magistrate Judge Shirley that because there are conflicts in the medical evidence, a more thorough step three analysis is needed. Finding no error in the report and recommendation, the court will overrule the Commissioner's objections; plaintiff's motion for summary judgment is **GRANTED** to the extent the case is remanded to the Commissioner to determine whether plaintiff meets the requirements of Listing 1.02A; and the Commissioner's motion for summary judgment is **DENIED.**

**ENTER:**

s/ Thomas W. Phillips
United States District Judge